IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2007

## STATE OF TENNESSEE v. CARROLL CARSON SANDERS

**Direct Appeal from the Criminal Court for Carter County
Nos. S16907, S16939, S16956     Robert E. Cupp, Judge**

_____

**No. E2006-00574-CCA-R3-CD** - Filed May 10, 2007

_____

The Defendant, Carroll Carson Sanders, pled guilty in two cases to eight counts of theft over $10,000, five counts of theft over $1000, and one count of theft over $500. The parties agreed to an effective sentence of ten years, with the trial court to determine the manner of service of the ten-year sentence, followed by five years of probation. After a sentencing hearing, the trial court ordered the Defendant to serve his effective ten-year sentence in the Department of Correction. On appeal, the Defendant contends that the trial court erred when it denied him an alternative sentence. Concluding there exists no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Gene. G. Scott, Jr., Johnson City, Tennessee, for the appellant, Carroll Carson Sanders.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Anthony W. Clark, District Attorney General; Kenneth C. Baldwin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the sentencing in case numbers S16907 and S16939.[1] In case number S16907, the Defendant pled guilty to two counts of theft over $10,000, with an agreed effective sentence of five years. In case number S16939, the Defendant pled guilty to six counts of theft over $10,000, five counts of theft over $1000, and one count of theft over $500 with an agreed effective sentence of ten years followed by five years of supervised probation. The parties agreed that the

_____

[1]In case number S16956 the Defendant pled guilty to failure to appear and received a one-year sentence that he does not appeal.

sentences in the two cases should run concurrently with the manner of service to be determined by the trial court.

The following evidence was presented at a sentencing hearing: Robert Gobble testified that he was a constable in Elizabethton where the Defendant owned a business. Gobble became friends with the Defendant, and the Defendant asked Gobble to invest in a business that the Defendant was forming. The Defendant told Gobble that for every $1000 that he invested in the company he would get one percent back from the company. Gobble invested $10,000, which the Defendant said would entitle him to ten percent of the company. Gobble also gave the Defendant $2000 in exchange for a 1965 Ford two-door hardtop car that was supposedly in Arizona. Gobble then gave the Defendant $10,000 to purchase Corvettes on which they could make a profit when the Defendant resold them to a dealer in Arizona. Additionally, Gobble was charged $2000 for the light bill on the business, which he expected would be paid by the Defendant. Gobble was never reimbursed for that bill by the Defendant.

Gobble testified that the Defendant left Carter County two or three weeks after he gave the Defendant the money for the Corvettes. The Defendant never told Gobble that he was leaving, and, the night before he left, he told Gobble that he was moving everything for the business into a building where the business was opening. Gobble discovered the Defendant had left town when he went to the shop and the Defendant's house the next day and there was no one at either place. Someone told Gobble that he saw the Defendant leaving that afternoon with a U-Haul truck and a trailer. On cross-examination, Gobble testified that he entered into a partnership with the Defendant. He also said that he thought that the 1965 Ford that the Defendant told him he could purchase for $2000 was worth between $13,000 and $16,000. Gobble agreed that the Defendant worked on Gobble's car and charged him only for parts, providing the labor for free.

Howard Ensor testified that he met the Defendant when the Defendant serviced some cars for him. Ensor recalled that the Defendant wanted to set up a motor sports business and needed some money. Ensor gave the Defendant $15,000, and the Defendant gave him the house that the Defendant was living in as collateral. Ensor then gave the Defendant $25,000 in cash for the business. Ensor also gave the Defendant $12,000 for a Cadillac and $500 to transport the car, but Ensor never received the car. Ensor stated that he gave the Defendant the money approximately six weeks before the Defendant left Carter County. Ensor said that, according to his agreement with the Defendant, he was to receive $1500 per month from the business, but he never received any money. On cross-examination, Ensor testified that he gave the Defendant over $52,000, $40,000 of which was investment in a business. In total, Ensor was expecting to receive for his investment $3500 per month for as long as the business was in operation.

Gary Cole testified that he met the Defendant when he was trying to purchase a truck. A mutual friend told Cole that the Defendant had a truck for sale for $9500. When Cole went to look at the truck, the Defendant said that he had just sold the truck but that he received similar trucks "all the time." Cole told the Defendant he would be interested in a truck. A few days later, the Defendant called Cole and told him that he had a truck for him for $9500. The Defendant told Cole

2

that he wanted $4000 as a deposit for the truck. The Defendant then asked Cole if he wanted another work truck, and Cole said "yes." In total, Cole gave the Defendant $11,000 for trucks that he never received. When confronted by Cole, the Defendant told Cole that he had mailed him a cashier's check for the money. On cross-examination, Cole agreed that he was going to pay the Defendant less than the trucks were worth. He also said that the Defendant fixed the front end of one of his trucks in exchange for Cole removing some stumps from the Defendant's business.

Dan Bowman, an investigator with the Highway Patrol, testified that he was the investigator in this case. He said that the business involved in this case was East Tennessee Motor Sports, but the business was not licensed with the motor vehicle commission. As part of his investigation, Investigator Bowman contacted the police in Arizona who informed him that the Defendant had committed similar crimes against forty victims in Arizona for a total theft of 1.5 million dollars. The investigator estimated that the total amount of money taken by the Defendant in this case was approximately $183,000.

Investigator Bowman testified that he spoke with the Defendant about these events, and the Defendant explained that he had been arrested in Arizona for obtaining money under false pretenses. The Defendant alleged that he gave a lot of money to a man named "Stoner" in Arizona for automobiles, and "Stoner" was not able to produce those vehicles. The Defendant justified his conduct in Carter County, stating that he had to pay off his debt in Arizona.

The presentence report reflected that the Defendant had two prior felony convictions and that, at the time of the hearing, he was serving a seven-year prison sentence, followed by seven years of probation, in Arizona.

Based upon this evidence and the arguments of counsel, the trial court denied the Defendant's request for probation in light of the Defendant's prior criminal history and after finding among other things that the Defendant lacked potential for rehabilitation and that society needed to be protected from possible future criminal conduct by the Defendant.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his request for an alternative sentence. When a defendant challenges the length, range, or the manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003)[2]. This presumption is "conditioned upon the affirmative showing in the record that

---

[2]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the Defendant's appeal.

the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See T.C.A. § 40-35-210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing Comm'n Cmts.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the case under submission, the record demonstrates that the trial court carefully and thoroughly considered relevant sentencing principles. Accordingly we apply the presumption that the trial court's sentencing determinations are correct. See T.C.A. § 40-35-401(d).

In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. T.C.A. § 40-35-303(b); Ashby, 823 S.W.2d at 169. Sentences involving confinement should be based upon the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2006). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe

measure necessary to achieve the purposes for which the sentence was imposed. See T.C.A. § 40-35-103(2), (4). Further, the potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5).

The Defendant asserts that the trial court erred because it improperly considered his prior criminal history and did not heavily weigh the fact that alternatives to incarceration have not been used with him. Further, the Defendant asserts that the victims in this case deserve restitution, and he can only do that if he is not incarcerated. We find the Defendant's contentions unpersuasive. The Defendant is currently serving a seven-year sentence in Arizona for similar crimes for which he owes victims a total of 1.5 million dollars. After being charged with those crimes, but prior to pleading guilty, the Defendant came to Tennessee and stole $183,000. It is unlikely that within any reasonable time frame any of the victims will receive the restitution to which they are entitled. Further, the trial court found that the Defendant lacked potential for rehabilitation because he repeatedly committed similar crimes. Finally, the trial court found that society needed to be protected from the Defendant. We conclude that the record supports the trial court's findings and that the trial court was well within its discretionary powers when it denied the Defendant an alternative sentence. Accordingly, we conclude that the Defendant is not entitled to relief on this issue.

### III. Conclusion

We agree with the judgment of the trial court. Accordingly, we affirm the Defendant's sentence.

_____
ROBERT W. WEDEMEYER, JUDGE